591 F.3d 638 (2009)
In re COMPLAINT OF JUDICIAL MISCONDUCT.
No. 09-01.
U.S. Judicial Conference Committee on Judicial Conduct and Disability.
October 26, 2009.
*639 Present: Judges JOHN M. WALKER, JR., Chair, JOSEPH A. DiCLERICO, DAVID M. EBEL, EUGENE E. SILER, JR., RALPH K. WINTER.[*]

MEMORANDUM OF DECISION
This appeal to the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States ("Committee") is taken under Rule 21(b)(1)(A) by the Petitioner from the Memorandum Opinion and Order of the Third Circuit Judicial Council ("Judicial Council") dismissing the Complaint in J.C. No. 03-08-90106 ("Complaint") filed by the Petitioner alleging judicial misconduct. The Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-364 and the Rules for Judicial-Conduct and Judicial-Disability Proceedings promulgated thereunder ("Act" and "Rules", respectively) govern the proceedings before the Judicial Council and this Committee.
The Complaint in this matter was filed with and received by the Third Circuit Judicial Council as it related to a separate complaint in J.C. XX-XX-XXXXX against the same respondent that had been transferred to the Third Circuit Judicial Council from the Ninth Circuit Judicial Council by the Chief Justice, as explained in the Judicial Council's Memorandum Opinion. The Judicial Council issued a separate Memorandum Opinion and Order in J.C. XX-XX-XXXXX, finding misconduct accompanied by "appropriate corrective action".
The events in 2001 that are the principal focus of the Complaint are summarized in the Report of the Proceedings of the Judicial Conference of the United States, September/October 2001, a public document containing the official minutes of Judicial Conference action, available at http://www. uscourts.gov/judconf/sept01proc.pdf. The Report provides the following background for the events at issue in this Complaint:
In September 1997, the Judicial Conference approved a judiciary-wide policy aimed at protecting the security of the judiciary's electronic systems and information, requiring that, for computers connected to the judiciary's data communications network, access to the Internet *640 would be provided only through national gateway connections approved by the Administrative Office pursuant to procedures adopted by the Automation and Technology Committee. It also urged all courts to adopt their own policies establishing local responsibility for managing employee access to the Internet and providing guidance on appropriate Internet use. In December 2000, concerned with the explosive growth in Internet usage within the judiciary, the Committee asked the Administrative Office to conduct an analysis of such use. The analysis revealed that a significant factor contributing to the growth of Internet traffic in the courts appeared to be related to personal, rather than business usage.
Informed of the Automation and Technology Committee's efforts, of the AO's analysis, and of subsequent steps taken to advise chief judges of potentially inappropriate Internet use, the Executive Committee, in March 2001, asked the Committee on Automation and Technology to develop a comprehensive plan for improving information technology security in the judiciary. The Executive Committee later expanded its request, urging the Automation Committee, on an expedited basis, to develop policies and procedures to protect the confidentiality of electronic judiciary communications and work product, including appropriate controls on monitoring.
Id. at 43 (citations omitted).
The Report includes the following account of the series of events discussed in the Complaint:
In March 2001, the Executive Committee was advised that, consistent with Judicial Conference policy, the Administrative Office was confidentially informing chief judges of potentially inappropriate use of the Internet by court personnel, so that the chief judge could take action, if appropriate. The Committee supported these actions, and asked the Committee on Automation and Technology to develop a comprehensive plan for improving information technology in the judiciary. In late May, upon hearing of objections by certain judges to the judiciary's Internet access policy as managed by the AO, the Executive Committee urged the Committee on Automation and Technology, on an expedited basis, to develop policies and procedures to protect the confidentiality of electronic judicial communications and work product, including appropriate controls on monitoring.
The Executive Committee subsequently learned that the Ninth Circuit Judicial Council had directed the disconnection of intrusion detection software installed at the Ninth Circuit Internet gateway (which also serves the Eighth and Tenth Circuits). This software made possible, among other things, the identification of high-volume music and movie files. Concerned that the security of judiciary data in these circuits was jeopardized, the Committee determined to ask that the Ninth Circuit Council reactivate the intrusion detection software immediately, and agreed that if this was done, the identification of high-volume files (to which the Ninth Circuit Council had objected) would cease in all three judiciary gateways, pending the previously requested development of policies and procedures by the Automation and Technology Committee. The Ninth Circuit Council agreed.
In June, and again in August 2001, the Executive Committee was informed by the Chair of the Automation and Technology Committee of the latter committee's efforts to develop procedures on *641 appropriate Internet use and the management of such use and on recommendations to be presented to the Conference for actions to be taken pending further development. In August 2001, the Executive Committee, with the concurrence of the Automation and Technology Committee, agreed to release to the public prior to the Conference session the latter committee's addendum to its report, which deals with this matter.
Id. at 39-40 (citations omitted).
Chief Judge Anthony J. Scirica, Chair, of the Third Circuit Judicial Council appointed a Special Committee to investigate the Complaint by Petitioner, who until 2006 was the Director of the Administrative Office of the United States Courts, against the Subject Judge-Respondent and two other judges, all of whom were members of the Ninth Circuit Court of Appeals.[**] The Petitioner alleges that the three were principally responsible for the Ninth Circuit Judicial Council's authorization to disable the intrusion detection software at the Ninth Circuit internet gateway and the temporary shut-down of the detection system from May 24 to June 2, 2001. Following an investigation and the receipt of the Special Committee's report, the Judicial Council issued its Memorandum Opinion and Order dismissing the Complaint on May 28, 2009.
The Judicial Council based its dismissal on two grounds: (1) the subject matter of the Complaint had been addressed and resolved by the Judicial Conference in 2001 and (2) the Petitioner's seven-year wait in filing the Complaint amounted to unreasonable delay. The reasoning of the Judicial Council may be summarized as follows:

1. The dispute was addressed and resolved in 2001

The Judicial Council determined that the dispute in 2001 between the Subject Judge and Petitioner over the operation of the intrusion detection software for the internet gateway for the Eighth, Ninth and Tenth Circuits, housed in San Francisco in the Ninth Circuit, had received "[e]xtensive review by the Executive Committee of the Judicial Conference of the United States, the Judicial Conference Committee on Automation and Technology, and the Judicial Conference Committee on the Administrative Office." The Judicial Council determined further that in 2001 "the full Judicial Conference of the United States, by formal action, addressed and resolved these issues by voting to adopt specific recommendations relating to the issues raised in the Complaint." As the Judicial Council's Memorandum Opinion states:
[t]o summarize, a policy disagreement and misunderstandings concerning the nature, scope and extent of the Administrative Office's monitoring policy with respect to Internet use escalated into a public dispute, reflecting some of the institutional tensions between regional and national authorities responsible for court administration. The Judicial Conference of the United States reached a proper and final resolution in 2001 by adopting policies that addressed and resolved the arguments and objectives of the interested parties.
The Judicial Council also noted that on February 12, 2008, the then-Chair of the Executive Committee of the Judicial Conference released the following statement[***] *642 on behalf of the Judicial Conference:
Seven years ago, there was an issue involving the detection of increased bandwidth use on computers in the Judiciary, the Judiciary's monitoring of such use, and the need to maintain security within the Judiciary's electronic communications and work product. The matter was thoroughly reviewed and resolved completely at that time by the Executive Committee of the Judicial Conference of the United States. The Judicial Conference of the United States adopted a national policy on internet use which was coordinated with its already-existing use of filters and controls over access to music and movies on computers within the Judiciary, much like those utilized in many other public and private organizations. The matter was properly concluded seven years ago, there was no finding of judicial misconduct, and the Executive Committee finds no reason to revisit today those decisions.
The Judicial Council Memorandum Opinion concluded with respect to its first ground for dismissal of the Complaint as follows:
The Complaint will be dismissed with respect to the actions of Subject Judge I and the Judicial Council of the Ninth Circuit in 2001, which were widely reported and thoroughly examined at the time. The matter was resolved in 2001 through formal action and a vote by the full Judicial Conference of the United States. The Judicial Conference found no reason to inquire further into the events of 2001 that preceded its official action, nor did it make any finding of judicial misconduct. Chief Judge Hogan, then-Chair of the Executive Committee of the Judicial Conference of the United States, reaffirmed this conclusion in 2008. The Complaint seeks to reopen this final resolution and will be dismissed. See 28 U.S.C. § 354(a)(1)(B); Rule 20(b)(1)(A)(iv).

2. Unreasonable Delay in Filing the Complaint

The Judicial Council also determined that dismissal was appropriate due to the Petitioner's unreasonable delay in filing the Complaint on November 24, 2008, more than seven years after the relevant events in 2001. In this regard, the Judicial Council noted that while there was no statute of limitations that barred the filing of a complaint, the complaint should be dismissed under Rule 9 which states that "[i]f the passage of time has made an accurate and fair investigation of the complaint impractical, the complaint must be dismissed" and the Commentary to Rule 11 which specifies that dismissal is "appropriate when a complaint is filed so long after an alleged event that memory loss, death, or changes to unknown residences prevent a proper investigation." The Judicial Council also referenced the commentary to a predecessor rule, Rule 1(d)(2000), that specified that "[A] complaint may be dismissed, for reasons analogous to laches, if the delay in filing a complaint would prejudice the ability of the Judicial Council to give fair consideration to the matter." Illustrative Rules Governing Complaints of Judicial Misconduct and Disability, Commentary on Rule 1(d) (2000). Expanding on the laches analogy, which it found "apt", the Judicial Council concluded that the laches doctrine properly applies to proceedings under the Judicial Conduct and Disability Act and arises from the *643 responsibility of all fact-finding bodies to "arrive at accurate conclusions as to the truth." Henson v. United States, 27 Fed. Cl. 581, 591 (1993). See Serdarevic v. Advanced Med. Optics, Inc., 532 F.3d 1352, 1360 (Fed.Cir.2008) (recognizing that unreasonable delay may "undermin[e] the court's ability to judge the facts" (quoting A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1033 (Fed.Cir. 1992))). The Judicial Council also cited the Report of the House Committee on the Judiciary with reference to 28 U.S.C. § 358(c) (barring the promulgation of a rule limiting the time for filing a complaint) that explained that, while only Congress and not a judicial council can create a statute of limitations, "dismissal  on a case by case basis  may be appropriate considering individual equities involved."
The Judicial Council found that the Petitioner had waited seven years to file the Complaint and had brought no circumstance to the Judicial Council's attention that would have precluded a filing "soon after [the Subject Judge] allegedly engaged in the actions at issue." The Judicial Council noted the absence of "any indication that any information in the Complaint was not available to Complainant at the time of the alleged events" in 2001. The Judicial Council also found that the Complaint contained "numerous allegations regarding statements, actions and intent of witnesses to the 2001 events who are now deceased," including the Chief Justice of the United States and the former chairs of both the Committee on Automation and Technology and the Executive Committee of the Judicial Conference of the United States as well as a former member of the Executive Committee of the Judicial Conference. The absence of these witnesses, the Judicial Council concluded, "whose statements, actions and intent are relevant to the complaint, combined with other typical consequences of the passage of time, pose steep impediments to a fair and accurate investigation and prejudice [the subject judge's] ability to rebut the allegations of the Complaint." Accordingly, the Judicial Council determined that "because the passage of time has made a fair and accurate investigation of the Complaint impractical, the Complaint will also be dismissed under Rule 9."
The Judicial Council concluded with respect to both grounds for dismissal that the Complaint was "not appropriate for consideration under `the Judicial Conduct and Disability Act'" and therefore had to be dismissed, under 28 U.S.C. § 354(a)(1)(B) and Rule 20(b)(1)(A)(iv) as well as under Rule 9.
Following the dismissal, the Petitioner filed a timely "Request" that this Committee review the Complaint and its disposition by the Judicial Council.

DISCUSSION
We agree with the decision of the Judicial Council dismissing the Complaint for the reasons set forth in the Council's Memorandum of Decision, which we adopt, and for the additional reasons that follow.
The Committee on Judicial Conduct and Disability acts on behalf of the Judicial Conference of the United States pursuant to 28 U.S.C. § 357 in reviewing petitions that appeal misconduct complaint determinations by a Judicial Council. As the Judicial Council's Memorandum Opinion makes clear, this is not the first time that the events of 2001 pertaining to the operation of the intrusion detection software at the judiciary's internet gateway in San Francisco have been before the Judicial Conference. In 2001, after the dispute between the Administrative Office and the Ninth Circuit occurred and was publicly disclosed, the Judicial Conference took action to remedy the situation by announcing *644 policy recommendations that had been formulated by the Committee on Automation and Technology. The dispute between the Administrative Office, of which Petitioner was the Director, and the Ninth Circuit Judicial Council, of which the Respondent was a member, was completely resolved. No ultimate harm to the judiciary arising from the Ninth Circuit's temporary closing of the gateway sensors was identified by the Conference and no member of the Judicial Conference, including the Chief Justice, its Chair, or the Petitioner, all of whom could have done so if any thought it warranted, initiated a misconduct complaint under the Act against the Subject Judge. The matter was considered on a second occasion in early 2008 by the Judicial Conference, this time acting through the Executive Committee whose Chair announced that the matter had been properly concluded in 2001 "without any finding of judicial misconduct" and that "the Executive Committee finds no reason to revisit today those decisions." Under these circumstances, this Committee agrees with the Judicial Council's decision declining Petitioner's invitation to again revisit the events of 2001.
The Complainant argues to us that "none of the many complaints and charges I raised against [the Subject Judge] were considered at all let alone disposed of with finality by the Judicial Conference in 2001 or by any subsequent conference or by any official entity of the federal judicial branch of government." This argument is misleading and, when the mistaken impression is corrected, of no assistance to the Complainant.
The argument intimates that the Complainant's "many . . . charges" were "raised" at the time. In fact, none were the subject of a misconduct complaint in 2001 (or for that matter until late 2008) which is why the Executive Committee Chair stated accurately in early 2008 that "the matter was properly concluded seven years ago" with "no finding of judicial misconduct."
It is true that no specific allegations of misconduct against the Subject Judge were considered by the Judicial Conference in 2001, but that is because none was filed. The Act specifies that anyone may file a complaint, 28 U.S.C. § 351(a); yet no member of the Judicial Conference, all of whom were fully familiar with the Subject Judge's actions, chose to do so, including, if the Complaint is to be credited, the two people most motivated to bring the Subject Judge to account: the former Chief Justice and the Petitioner, who was the Secretary to the Conference. We can only assume from the absence of a misconduct complaint filing, that both of these individuals were content with the Judicial Conference's complete resolution of the dispute between the Ninth Circuit and the Administrative Office as an administrative matter.
We also agree with the Judicial Council's reasoning that the laches doctrine may be applied on a case-by-case basis to dismiss misconduct complaints under the Act, notwithstanding the prohibition of § 358 of the Act that "[n]o rule promulgated under this section may limit the period of time within which a person may file a complaint under this chapter." That provision prohibits judicial councils and this Committee from adopting a flat rule that specifies a limitation period for the filing of complaints under the Act, but it does not foreclose a judicial council from determining that the passage of time accompanied by an unreasonable delay in filing a misconduct action justifies dismissal in a particular case. Here prejudice to a full and fair investigation of the Complaint from the seven-year delay is manifest. The Complaint relies extensively *645 upon purported statements by the former Chief Justice to support the Complaint's credibility, to excuse Petitioner's failure to file a complaint for seven years, and to justify the Petitioner's actions in pursuing the Complaint in 2008. The Chief Justice was the Petitioner's superior and direct supervisor and we have no doubt that his views would govern whether Petitioner's filing a misconduct complaint against the Subject Judge at the time would have been appropriate. Yet during the four years from 2001 until the death of the Chief Justice in 2005, no complaint was filed by the Petitioner (or anyone else). The circumstances surrounding this inaction would be highly relevant to any current investigation, which would likely entail a defense by the Respondent that the Chief Justice believed that the dispute was essentially a bureaucratic one and that the Respondent's conduct was not deserving of a misconduct complaint. The Complaint alleges a diametrically opposite position by the Chief Justice, replete with alleged statements by the Chief Justice that, Petitioner says, justify his seven-year delay in filing the Complaint. With the Chief Justice unavailable as a witness, however, a full and fair investigation into this aspect of the matter is not possible.
The Petitioner argues that before a rule change in 2008, a judicial misconduct complaint arising in the Ninth Circuit could only be made to the Chief Judge (or Acting Chief Judge) of the Ninth Circuit for resolution by that Circuit's Judicial Council and that, in this case, such an action would have been futile because that Judicial Council had sided with the Subject Judge in the dispute and authorized his actions. This argument is based on speculation only. Petitioner makes no showing that a Complaint against the Respondent could not have been appropriately considered by the Ninth Circuit Judicial Council, composed of Article III judges whose duty would have been to determine whether the Complaint raised an issue of misconduct consisting of conduct "prejudicial to the effective and expeditious administration of the business of the courts." In any event, the Petitioner's assertion that, prior to the 2008 Rules adoption, his Complaint could not have been decided by a Judicial Council other than that of the Ninth Circuit is incorrect. While before 2008 no formal rules under the Act provided for the transfer of judicial misconduct complaints between judicial councils and the statute was silent on the question, in fact such transfers had occurred on several occasions. The Breyer Committee Report, issued in 2006, identified "eight instances since 1980 in which the Chief Justice designated a circuit judge to handle a Complaint in another circuit pursuant to the intercircuit assignment statute [28 U.S.C. § 291(a)]." The Judicial Conduct and Disability Act Study Committee, Implementation of the Judicial Conduct and Disability Act of 1980: A Report to the Chief Justice 116 (2006), available at http://www. supremecourtus.gov/publicinfo/ breyercommitteereport.pdf.
We have no doubt that the Petitioner, as the chief administrative officer of the federal judiciary under the Chief Justice, was aware of this procedural course or that he could have acquired such knowledge, either from the Chief Justice, who had made such assignments in the past, or from his subordinates.
The Complaint, in addition to its primary focus on the events of 2001 pertaining to the computer gateway portals in San Francisco, also references allegations of possible misconduct against the Subject Judge that are the subject matter of the separate complaint before the Third Judicial Council in J.C. XX-XX-XXXXX. To the extent that the Petitioner brings issues to our attention that are the subject of that *646 complaint, an extended discussion is unnecessary because we agree with the Judicial Council of the Third Circuit. The Complaint in J.C. XX-XX-XXXXX was thoroughly investigated by the Judicial Council, resulted in a finding of misconduct, accompanied by corrective action consisting of a full admission of error and apology by the Respondent, and appropriate action by the Judicial Council against the Subject Judge pursuant to § 354(a)(1)(c) of the Act and Rule 20(b)(1)(B), (D) and (E). See In Re: Complaint of Judicial Misconduct(J.C. XX-XX-XXXXX), Memorandum Opinion at 11-12 (3rd Cir. Jud. Council June 5, 2009), available at http://www.ca3.uscourts.gov/ opinarch/089050p.pdf.
The Petitioner, in addition to appealing from the Judicial Council's disposition of his misconduct allegations arising from the 2001 San Francisco gateway intrusion detection software dispute and citing matters that were appropriately resolved in the disposition of Complaint in J.C. No. 03-08-90050, alleges in the Complaint and to this Committee that an unidentified "Ninth Circuit Judge" has said that the respondent improperly appointed his wife to be a bankruptcy referee; that "persistent authoritative reports" have been received that the respondent "persuaded or compelled one or more Ninth Circuit Court of Appeals technical experts" to wire his house, at no cost to him, install computers and other related equipment and that these reports were conveyed by the Ninth Circuit to Administrative Office staff; and that the Respondent, "according to what appear to be authoritative reports" improperly used his official staff in a campaign to promote personal publicity on Respondent's behalf.
These three allegations were not addressed in the Judicial Council's Memorandum Opinion and may not have been considered by the Judicial Council. There is no need, however, to remand them for further consideration because they do not meet the pleading requirements of Rule 6(b) and must be dismissed.
The most these allegations accomplish is to put the Judicial Council on notice of possible misconduct by the Respondent. Rule 6(b), however, requires what amounts to fact pleading, not notice pleading. Rule 6(b) in relevant part provides:
(b) A complaint must contain a concise statement that details the specific facts on which the claim of misconduct or disability is based. The statement of facts should include a description of:
(1) what happened;
(2) when and where the relevant events happened;
(3) any information that would help an investigator check the facts; . . .
(emphasis added).
Rule 6(b) makes clear that the complaint must be more than a suggestion to a Chief Judge that, if he opens an investigation and the investigating body looks hard enough in a particular direction, he might uncover misconduct. It must contain a specific allegation of misconduct supported by sufficient factual detail to render the allegation credible. The three allegations in the Complaint fall far short of the mark and are based on little more than rumor and gossip that at most could be leads into possible misconduct. The Petitioner refers to anonymous "reports" without any attempt to identify the reporting individuals or to explain why such identification is not feasible. One report is by an unidentified "Ninth Circuit Judge," a second by "Ninth Circuit Staff" as reported to "AO Staff" with no staffers identified, and a third is based on no more than "what appears to be authoritative reports" with no suggestion even as to the nature of the reporter, much less the reporter's identity. *647 There is no specificity in any of these allegations beyond the most general claim as to "what happened" and nothing is said as to "when and where the relevant events happened." Plainly, these allegations are insufficiently pled and must be dismissed.
In addition to the foregoing allegations, there is a suggestion from amendments to the Complaint filed by the Petitioner with this Committee that there might be ongoing approval by the Subject Judge of the transmission of pornographic images over the judiciary's computers. While this allegation, if properly stated under Rule 6(b), could have been presented to the Judicial Council, it was not; and for that reason and based on its lack of specificity, we will not consider it.[****]
Finally, this matter has raised questions pertaining to the circumstances under which recusal is required by a judicial officer charged with the responsibility of administering judicial misconduct complaints. The Rules specify certain mandatory disqualifications from judges who otherwise would have responsibility for deciding a judicial misconduct complaint at one or more levels of review. A judge who files a complaint is disqualified, unless it is a chief judge who has identified a complaint under Rule 5. Rule 25(a). The subject judge is also disqualified. Rule 25(b). And a member of the Committee on Judicial Conduct and Disability is disqualified if the member is from the same circuit as the subject judge. Rule 21(c).
On the other hand, a chief judge is not disqualified from reviewing, as a member of a judicial council, an order entered by the chief judge. Rule 25(c). A member of a judicial council is not disqualified from considering a report of a special committee in which that member participated. Rule 25(d). And no member of the Committee on Judicial Conduct and Disability is disqualified in any proceeding under the Act because of prior consultations with a chief judge, a member of a special committee or a judicial council unless the member believes that the consultation would prevent fair-minded participation. Rule 25(h).
The rules for recusal that pertain to judges performing their ordinary judicial function, 28 U.S.C. § 455, are not a template for recusals in misconduct proceedings under 28 U.S.C. §§ 351-354. Misconduct proceedings are administrative, and not judicial, in nature. Accordingly, as Rule 25 makes clear, there is no requirement for a chief judge, or for that matter any judge, to be recused from performing a function under the Act even if the judge has performed an earlier function under the Act with regard to the same complaint. See Report and Recommendations of the Judicial Conference Comm. On Judicial Conduct and Disability 18 (U.S. Jud. Conf. June 2008)("The performance of one function does not render a chief circuit judge disqualified to perform the others."), available at http://www.ca5. uscourts.gov/news/news/PorteousOrder/CERTIFICATETO" THESPEAKER.PDF; In re Memorandum of Decision of Judicial Conference Comm. on Judicial Conduct and Disability, 517 F.3d 563, 568 (U.S.Jud.Conf.2008)(concluding that participation in earlier administrative proceedings "in no way constitutes recusable *648 bias"). Thus, a chief judge may identify a complaint and, having done so, serve as chair of the judicial council that reviews the complaint and chair of the special committee making recommendations to the judicial council. The fact that the judge has prior, even intimate, knowledge of the subject matter of the complaint, and has even formulated an opinion of the subject judge's conduct is of no moment. By the same token, a judge who is a witness to the events upon which a complaint is based, but who has no personal interest in its disposition, need not recuse himself from the determination of that complaint at one or more levels of review.
While Rule 25(a) permits disqualification "if the judge, in his or her discretion, concludes that circumstances warrant disqualification," the appropriate standard for exercising discretion in this context should reflect the administrative nature of the proceeding. If under all of the circumstances, including prior knowledge of the case and even a previously held opinion, the judge believes that he or she can be "fair-minded" in his or her participation, see Rule 25(h), recusal is not warranted and the judge should fulfill his or her duty to participate.

CONCLUSION
For the reasons discussed above, we deny the petition for review.
NOTES
[*] Judge Winter was appointed by the Chief Justice to fill a vacancy due to recusals, pursuant to Rule 21(c).
[**] The three judges were referenced in the Judicial Council's Memorandum Opinion as Subject Judge I, II and III. The Petitioner only appeals the dismissal of the Complaint as to Subject Judge I, whom we refer to herein as the "Subject Judge" and "Respondent".
[***] The then-Chair has informed this Committee that the statement was issued in response to press inquiries.
[****] The Third Circuit Judicial Council also addressed in footnote 10 of its Memorandum Opinion an additional claim by Petitioner, filed as a separate complaint, No. 03-09-90009, that Respondent maintained a "gag list" file on a university e-mail account, some of which allegedly included tasteless material. The Judicial Council found that appropriate corrective action had been taken in the form of an apology offered by the Subject Judge to the Special Committee investigating the complaints. There is no basis to disturb this finding by the Judicial Council.